LINDSEY H. DURHAM, plaintiff in error, vs. THOMAS C. BROD-
DUS, defendant in error.

To require the granting of a new trial on the ground that the verdict is con-
trary to the evidence, it must clearly appear that the verdict *is* contrary to
the evidence.

Assumpsit, and motion for new trial, in Jasper Superior
Court. Tried before Judge HARDEMAN, April Term, 1858.

This was an action for breach of warranty of the sound-
ness of a negro woman, Lucy, sold by Broddus to Durham.
The bill of sale bears date 3d January, 1852, and contains
the usual warranty of soundness of mind and body.

After the testimony had closed on both sides, a full state-
ment of which will be found in the opinion pronounced by
this Court, the presiding Judge charged the jury that if they
should believe, from the evidence, that the negro Lucy was
unsound at the time of the sale, they should find for the plain-
tiff. That the fact that the defendant may not have known
of the unsoundness at the time of the sale, made no differ-
ence, if the negro was unsound at that time. That although
the disease may not have developed itself at the time of the
sale, yet if it existed at that period, the defendant was liable
on his warranty. He was liable without fraud, if there was
disease at the time of the sale.

The jury found for the defendant, and plaintiff moved for
a new trial upon the following grounds:

1st. Because the verdict was contrary to the law as given
in charge to the jury by the Court.

2d. Because the verdict was contrary to the evidence, and
decidedly and strongly against the weight of evidence.

3d. Because the verdict was contrary to the charge of the
Court.

The Court refused the motion for a new trial, and plaintiff
excepted.

GEORGE T. BARTLETT & W. W. ANDERSON, for plaintiff in error.

THOMAS C. BRODDUS, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

Ought the Court to have granted the motion for a new trial?

All the grounds of the motion, may be resolved into a single one—that the verdict was contrary to the evidence.

The question then is, was the verdict contrary to the evidence.

The day of the sale was the 3d of January, 1852. Was the woman unsound on that day? This is the question.

Dr. Dickerson's testimony was, that on the 22d of January, 1852, he examined her for insurance, and she told him that her "menstruation was irregular, and much too copious." That on the 26th of March, he "made a digital examination of the neck and mouth of the womb, and found them, and the whole womb, considerably enlarged." That "this examination was made during the flow of the menses, at such times the womb is generally enlarged." That "at this time he supposed, she was only laboring under excessive menstruation, for which" he "prescribed suitable remedies." That he "visited her the next day, and discharged her from" his "attentions; she in a day or two afterwards resumed her ordinary business."

That "on the 23d of September, (1852,)" he "was again called to see Lucy, made the same kind of examination, found her in the same condition, prescribed the same or similar remedies, and did not repeat his visit."

That in January, 1853, he again examined her, for insurance, but "declined to recommend her for insurance, fearing she might be more seriously diseased, than" he "had previously supposed her to be." That he "recommended

her for insurance, the year previous, with a statement to the agent, that her menstruation was too copious and irregular, but" that he "did not suppose it would materially increase the risk, for that year.".

That "on the 8th and 9th of March, 1853," he "visited Lucy again during a "menstrual period." That he "found her in a similar condition to what" he had "above described, but the flow more copious, and less under the control of medicine."

That "after the 9th of March," he "did not visit her again until the 17th of May following." That "from the 17th to the 28th of May," he "visited her daily, and generally, twice a day, more for the purpose of mitigating her sufferings, than with a hope of effecting a cure. During most of the time, from the 17th to the 28th of May, 1853, Dr. John P. Nelson attended Lucy with" him. That they, "in company, made an examination of the mouth and neck of the womb, with a speculum; found them considerably ulcerated, and" they "both decided the ulcer to be cancerous, and that it would very certainly, ultimately, terminate in death."

That, "as to how long she had been affected with the disease, before" he "first saw her," he could not "decide with any certainty. From the usual character of diseases of this character," he thought "it probable, the disease was in an incipient stage, on or before, the 3d day of January, 1852.

Dr. Nelson's testimony was, that Lucy must have been diseased "for a long time" before the examination of her, made by Dr. Dickerson and himself. He believed, that "her decease was hereditary." That she "must have been diseased before the 3d day of January, 1852." He said that her disease was found to be cancer of the womb.

Dr. Durham's testimony was, that the woman was brought under his treatment on the 13th of July, 1853. That he considered her disease cancer of the womb, and, incurable; that he could not "state any precise time, that she might have

Durham vs. Broddus.

been diseased, but, in all probability, for some years. The inevitable result of the disease was death, which occurred on the 22d November, 1853."

Dr. Maddux's testimony was, that he knew Lucy, that she was staying at his house at the time of the sale ; had known her eighteen months or two years ; considered her at the time of the sale in good health  Was the family physician of Broddus, (the defendant,) and never knew her sick at any time.  That there is no mode of determining by examination of a patient laboring under cancer of the womb, how long the disease may have existed.  The disease, generally, terminates in death, in one year ; it is sometimes longer and sometimes shorter."

John C. Maddux testified, that in August, 1852, he heard plaintiff say, that he was well pleased with the two negroes.

Dr. Dickerson, in another set of interrogatories, stated, that he visited Lucy from the 17th to the 28th of May, 1853, that her " symptoms were greatly aggravated ; instead of being menses and blood as they had been before, the discharge was sanious and very offensive.  He also used this language :  " From all I now know of the nature and history of Lucy's disease, I consider it very probable, she was afflicted with it, before the 3d day of January, 1851, but of this I am not certain by any means."  The witness, it was admitted, meant to say 3d of January, 1852.

In another set of interrogatories for Dr. Nelson, he stated that he " did not attend Lucy long enough, to answer whether Lucy's disease was of the slow or rapid type."  Also, that he could not "say, whether or not Lucy was diseased on or before the 3d January, 1851".  It was also admitted, that he meant eighteen fifty-*two*.

This was the evidence.  And we think, it such as to leave it doubtful, whether the woman had *cancer* of the womb, (the disease of which she died,) on the day of the sale.  The reasons for this opinion, will present themselves, spontaneous-

ly, to an attentive reader of the evidence. It is therefore needless to state them.

Consequently, we think the case one in which the verdict ought not to be disturbed. The onus is on the losing party, to show affirmatively that the verdict is contrary to the evidence. Raising a doubt is not enough.

Judgment affirmed.